## CARPENTER *v.* CLARK.

1. QUO WARRANTO—MANDAMUS—TITLE TO OFFICE.
   *Quo warranto* and not mandamus is the proper remedy to try title to an office.

2. MANDAMUS—ANSWER—TITLE TO OFFICE NOT TRIABLE.
   In mandamus proceedings by the *prima facie* secretary of an agricultural society to require his predecessor to deliver to him all the books, papers, records, etc., belonging to such office, allegations in defendant's answer that the election was fraudulent and that he himself received a majority of the votes cast at said election were immaterial and irrelevant, and not pleadable, since the issue thereby raised involved trial of title to the office, which may be tried only by *quo warranto*.

3. SAME—FAILURE TO DENY IMMATERIAL ALLEGATIONS NOT ADMISSION.

Failure by plaintiff to answer immaterial and irrelevant allegations in defendant's answer did not constitute an admission that the same were true, under the provisions of the judicature act (3 Comp. Laws 1915, § 13440), providing that all material facts stated in the return not specifically denied shall be taken as admitted to be true.

4. SAME—PROPER REMEDY TO COMPEL DELIVERY OF OFFICIAL PROPERTY—PRIMA FACIE OFFICER.

Mandamus will lie to compel delivery of books, papers, etc., to the person showing a *prima facie* right to the office against one in possession other than a *de facto* officer acting under color of law based on appointment or election.

5. OFFICERS—DE FACTO OFFICER—PUBLIC NECESSITY.

The doctrine of a *de facto* officer originated as a rule of public necessity to prevent public mischief and protect the rights of innocent third parties who may be interested in the acts of an assumed officer apparently clothed with authority.

6. SAME—DE FACTO OFFICER TO PUBLIC BUT NOT WHERE OWN RIGHTS INVOLVED.

A person clothed with apparent authority may be a *de facto* officer to the general public and to innocent third persons, but not such where his own rights are involved, nor to those fully advised of his status, nor against one showing a *prima facie* right to an office he unlawfully withholds.

Certiorari to Clinton; Moinet (Edward J.), J. Submitted October 11, 1921. (Calendar No. 29,780.) Decided December 21, 1921.

Mandamus by Lewis J. Carpenter to compel Charles S. Clark to vacate and surrender the office of secretary of the Clinton County Agricultural Society. From an order granting the writ, defendant brings certiorari. Affirmed.

*Searl & Searl,* for appellant.

*Smith, Hunter & Spaulding,* for appellee.

STEERE, C. J. Defendant seeks by certiorari review and reversal of an order by the circuit court of Clinton county granting a peremptory mandamus requiring "the said Charles S. Clark to deliver up and turn over to said Lewis J. Carpenter, petitioner, all the books, papers, records and other property in his possession, or under his control, appertaining or relating to the office of secretary of Clinton County Agricultural Society." In his petition to the circuit court for a mandamus, Carpenter showed that on October 8, 1920, the Clinton County Agricultural Society, a corporation organized under appropriate laws of this State, held its annual meeting in St. Johns for the election of officers and such other business as might require attention. According to the minutes of said meeting, recorded and signed by defendant Clark who was then its secretary, an election of officers of the society was had and, among other officers chosen, plaintiff was elected secretary of the society, entitling him to a compensation of $400 per year for his services. He soon thereafter requested of defendant as his predecessor all the papers, books and records appertaining to said office. His request not being complied with, he, on various subsequent occasions, repeated the request, followed by demand; but defendant absolutely refused to deliver the same or any part thereof to him, as it was his duty to do. A copy of the minutes of that meeting is made a part of his petition and, as far as material here, shows it was regularly held, pursuant to notice, conducted by its then officers, and that new officers for the ensuing year were duly elected by ballot. As recorded and signed

217 Mich.—5.

by defendant Clark, as secretary, the minutes relating to election of secretary show:

"Ballot was spread, which resulted as follows: L. J. Carpenter, 8; C. S. Clark, 8. No choice. Re-ballot resulted as follows: L. J. Carpenter, 11; C. S. Clark, 6."

Defendant answered plaintiff's petition admitting the annual meeting of the society was held pursuant to published notice at the time and place alleged and the proceedings were recorded by him as its secretary in a proper book kept for that purpose; but alleging that he "at the time of the announcement of said election and at the time he made the record in said secretary's book, of which Exhibit 1 is a copy, had no knowledge" that the count then had and the report thereof were incorrect and fraudulently made by plaintiff who was appointed by the president of the society one of the tellers at said election. In that connection, he further and at length charges that plaintiff as teller at said election fraudulently manipulated the ballots and had counted and announced for himself ballots cast for defendant who in fact received a majority of all the votes cast, as he afterwards ascertained; in support of which affidavits of members present and voting at said meeting are attached to and make a part of his answer. Claiming that he was himself elected secretary of the society by virtue of said election, and contending that he was at the time said mandamus proceedings were begun such officer *de facto* and *de jure* entitled to retain the papers, records and other property appertaining to said office, he further alleges that the court had no jurisdiction over the proceeding as presented by the petition and answer, which involved title to the office of secretary; and mandamus is not the proper remedy to try the title to the office, or obtain its books and records from a *de facto* officer in possession.

The case was heard upon petition and answer. At the hearing plaintiff's counsel urged that no material matter was alleged in defendant's answer requiring an answer from plaintiff; that the portion of defendant's answer alleging that the election was fraudulent and he had himself received a majority of the votes cast and affidavits in its support were in their nature surplusage, immaterial, irrelevant, not pleadable in a mandamus proceeding, and could not be considered by the court.

Defendant's counsel first urge that in not traversing or answering his answer to plaintiff's petition, the latter thereby admitted the same to be true, under the provisions of the judicature act (section 13440, 3 Comp. Laws 1915), which reads as follows:

"Whenever a return shall be made to any such writ, the person prosecuting the same may plead to all, or any of the material facts contained in said return; and such issue of fact thus joined shall be determined as in other cases: *Provided,* That all material facts stated in said return that are not specifically denied by plea, shall be taken as admitted to be true."

There is nothing in this to indicate that immaterial facts, or conclusions of law, stated in the return to a mandamus call for specific denial. If the allegations in defendant's return that the count of ballots was fraudulently made and he himself received a majority of the votes cast at that election were not pleadable as a defense in a mandamus proceeding, because the issue thereby raised involved trial of title to the office, the facts stated in that particular were manifestly immaterial, irrelevant, not available to him as a defense in this proceeding and called for no answer.

The trial court so held, and found plaintiff had shown *prima facie* title to the office of secretary of the society; that the court could not go behind the election and count there made, announced and re-

corded; defendant was not shown to thereafter be a *de facto* officer under color of right; and was therefore relegated for trial of title to the office under his claim of fraudulent count to *quo warranto,* saying in part:

"So that, the issue here presented, when stripped of the elaboration of the charges of fraud and the greater number of votes in behalf of respondent (all of which go to make it appear to be an election contest), is, as the relator shows by the records of such meeting, that he has the *prima facie* title to the office of said secretary, and it seems to the court that the records do so show; and, therefore, the court is of the opinion that he is entitled to the books and records appertaining to such office."

Against these conclusions defendant's counsel interpose and discuss the propositions that—

"(1) The relator did not show a *prima facie* right to the office of secretary.

"(2) The writ of mandamus will not issue against an officer already exercising the functions of an office *de facto* and under color of right.

"(3) *Quo warranto* and not mandamus is the proper remedy to try title to an office."

The last proposition is conceded to be a settled general rule of law in this jurisdiction, and elsewhere under the great weight of authority. In *People* v. *Detroit Common Council,* 18 Mich. 338, where it was alleged as ground for relief that the city council had wrongfully deprived relator of office by refusing to properly count votes in his favor the court held that "mandamus was not the proper proceeding to try the right to a public office." This, often coupled with the statement that *quo warranto* is the proper remedy, has since been repeated in many decisions of this court. The subject is well reviewed by Justice STONE in *Gildemeister* v. *Lindsay,* 212 Mich. 299, where *Frey* v. *Michie,* 68 Mich. 323, is particularly referred to

and quoted from.    The *Frey Case,* in an opinion written by Justice CAMPBELL, recognizes also that a person "with a proper evidence of title" may in certain cases have relief by mandamus as follows:

"The only way to try titles to offices finally and conclusively is by *quo warranto.*    Even where a mandamus is issued to seat a person who produces the proper evidence of title, it does not settle the title at all.    *Doran* v. *De Long,* 48 Mich. 552; *People* v. *Detroit Common Council,* 18 Mich. 338.    It was held in *Jhons* v. *People,* 25 Mich. 499, that the title to office cannot be tried collaterally.    See, also, *Curran* v. *Norris,* 58 Mich. 512."

Of the proper evidence of title, it is said in Merrill on Mandamus, as introductory to section 152:

"Party having the *prima facie* title to an office can enforce his rights as such officer by the writ of mandamus."

And, more directly to the instant contention, in section 154:

"As indicated in a prior section, the officer entitled to the possession of the books, papers, records and insignia of office, and to the rooms and buildings properly under his control, may obtain such possession by the writ of mandamus, when they are improperly retained from him.    One who has been appointed or elected to an office may by this writ obtain all the muniments of his office from his predecessor.    *    *    *    Though there may be a dispute as to the title to the office, even those courts which refuse to try the title to an office by the writ of mandamus will issue the writ in such cases in favor of the party who shows the *prima facie* title.    Such action will in no way prejudice or affect the contest for the office."

To like effect it is said in *Thompson* v. *Holt,* 52 Ala. 491:

"A *prima facie* title to a public office confers a right to exercise its functions, and a right to the possession of the insignia and property thereof.    On this *prima*

*facie* title the court will compel a delivery of the insignia and property, that the functions and duties of the office may be exercised. * * * The court must rest on the *prima facie* title, and award the keeping of the property of the office to this title, for the time being, without adjudicating whether the relator has or not the actual title."

In *State* v. *Hyland,* 75 Neb. 767 (107 N. W. 113), where mandamus was granted compelling an officer whose term had expired to turn books, papers, etc., of the office over to a successor showing *prima facie* right by election, who it was claimed was not then eligible to the office, the opinion concludes a discussion of the question as follows:

"The two principles controlling this and like cases have been clearly set forth by the supreme court of Oklahoma as follows: 'As to the writ of mandamus, then, we have two settled rules as to public offices and the effects and belongings thereto: The one that mandamus will not lie to try the title to a public office, and the other, that it will lie to compel the predecessor to deliver to his successor the books, papers, records, moneys, insignia, and paraphernalia thereof when the relator shows an absolute *prima facie* title. No court or lawyer of today would for a moment controvert those two well settled rules of modern jurisprudence.' *Ewing* v. *Turner,* 2 Okla. 94 (35 Pac. 951)." Citing cases.

*Vide,* also, the numerous cases cited and discussed in. L. R. A. 1915A, 833 *et seq.*

Aside from his charges of fraudulent count and announcement of the ballot cast resulting in plaintiff being declared and recorded elected instead of himself, defendant admits plaintiff's *prima facie* evidence of right to the office as we understand the record. He admits a legal election held at which he claims to have been actually elected to the office, but alleges plaintiff was fraudulently counted in. To determine that charge would necessarily involve trial of title to the

office with the burden of proof resting upon him, for which *quo warranto* and not *mandamus* is the proper remedy.

While perhaps not directly on all points here involved concisely· summed up in any one case, the convincing tenor of the numerous decisions in this State which touch those questions is in harmony with the great weight of authority holding that while *quo warranto* and not *mandamus* is the remedy by which to try title to an office, mandamus will lie to compel delivery of books, papers, etc., to the person showing a *prima facie* right to the office against one in ·possession other than a *de facto* officer acting under color of law based on appointment or. election.

The doctrine of a *de facto* officer is said to have originated as a rule of public necessity to prevent public mischief and protect the rights of innocent third parties who may be interested in the acts of an assumed officer apparently clothed with authority and the courts have sometimes gone far with delicate reasoning to sustain the rule where threatened rights of third parties were concerned.   In that aspect of the subject it has been˙ said: "Society could hardly exist without such a rule." *People* v. *Hopson,* 1 Denio (N. Y.), 574.   But different considerations arise when the protection of third parties is not involved.   A person clothed with apparent authority may be a *de facto* officer to the general public and to innocent third persons but not such where his own rights are involved nor to those fully advised of his status, nor against one showing a *prima facie* right to an office he unlawfully withholds.   The subject is ably discussed by Chief Justice CAMPBELL and Justice COOLEY in *Auditors of Wayne Co.* v. *Benoit,* 20 Mich. 176 (4 Am. Rep. 382).   It is there said by Justice COOLEY:

"But the party himself who had usurped a public

office is never allowed to build up rights, or to shield himself from responsibility on no better basis than his usurpation."

In *Jones* v. *Oates,* 86 Wis. 634 (57 N. W. 296, 39 Am..St. Rep. 912), Oates refused to surrender possession of the office after expiration of his term, contending that he had been re-elected. Jones had been declared the successful candidate, received a certificate of election and qualified. On Oates' refusal to surrender Jones brought mandamus proceedings to compel delivery to him of the books, papers, etc., of the office. Oates in defense set up the fact that he received the greater number of votes at the election and was himself re-elected to the office. It was held in an able opinion on the subject by Justice Winslow that such defense could not be pleaded in a mandamus proceeding against one showing a *prima facie* title, and that the contest could only be made on *quo warranto*. As to the defense that mandamus would not lie against Oates because a *de facto* officer in possession the court said:

"It is not material here to consider who may be a *de facto* officer as to third persons and the public in general. The question is, Who is a *de facto* officer, as against the person holding a certificate of election, who has duly qualified as required by law? On this question the law is well settled. A *de facto* officer is one who is in possession of an office and discharging its duties under color of authority. McCrary, Elect. (3d Ed.) § 218; 2 Dill. Mun. Corp. § 892. By color of authority is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer. McCreary, Elect. § 218. Tested by this rule, it is apparent that the defendant is in no proper sense a *de facto* officer as against the relator. There has been no canvass or determination by any one in his favor, nor has he any certificate, commission, or authority from any person, officer, or board purport-

ing to authorize him to discharge the duties of the office."

Conceding the Wisconsin case is favorable to plaintiff's position, defendant's counsel urge that it is in direct conflict with *Ashwell* v. *Bullock,* 122 Mich. 620, which is "a direct holding that mandamus is not the proper remedy upon the statement of facts in this case," and the question being "one of practice and procedure the ruling in our own State should be followed." The controlling facts in that case are not the same. Ashwell was the moving party against a *de facto* officer in possession under an appointment by the proper appointing body if legally organized. The statement of facts in that case shows Bullock was in possession and discharging the duties of the office of secretary of the school board of Highland Park under color of authority derived from an appointment by what he contended was the duly constituted school board, while Ashwell claimed title under appointment to the office by a differently constituted board, claimed by him to be the legal organization. The inquiry involved not only Ashwell's title as secretary and title to the office of trustee, a prerequisite to that of secretary, but also the titles of two other persons to the office of trustee, neither of whom was before the court.

In the instant case it is undisputed that the annual meeting of this society was held, on October 8, 1920, pursuant to notice and officers to succeed the then incumbents were elected. Defendant, then secretary, recorded the proceedings which show plaintiff's election to succeed him, and *prima facie* right to the office. He makes no claim that the election as such was invalid nor does he deny that a secretary was then and there elected. On the contrary he asserts that he was himself duly elected, though fraudulently counted out, and that by virtue of that election he is rightfully

in possession as such officer *de facto et de jure.* Whoever was elected, his previous term ended with the election and acceptance of the office by his successor, whether himself, or his opponent who shows by the records *prima facie* right to the office. His defense of title to that office rests in parol, a tendered issue triable only by *quo warranto* proceedings.

The order granting a peremptory writ of mandamus will therefore stand affirmed.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.